UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROSE WILCHER, | ) | Case No. 5:05 CV 0866 |
| | ) | |
| Plaintiff, | ) | Judge David D. Dowd, Jr. |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| CITY OF AKRON, et al., | ) | (Regarding Docket No. 8) |
| | ) | |
| Defendants. | ) | Magistrate Judge James S. Gallas |
| | ) | |

This matter has been referred for hearing and report and recommendation on plaintiff's motion for preliminary injunction. There are four factors to be weighed in determining whether plaintiff is entitled to a preliminary injunction:

(1)     Whether the movant has a strong likelihood of success on the merits;
(2)     Whether the movant would otherwise suffer irreparable injury;
(3)     Whether issuance of a preliminary injunction would cause substantial harm to others; and
(4)     Whether the public interest would be served by the issuance of a preliminary injunction.

*Tucker v. City of Fairfield, Ohio*, 398 F.3d 457, 461 (6th Cir. 2005). "It is important to recognize that the four considerations applicable to preliminary injunctions are factors to be balanced *and not prerequisites* that must be satisfied." *Sandison v. Michigan High School Athletic Ass'n*, 64 F.3d 1026, 1030 (6th Cir. 1995); *USACO Coal v. Carbomin Energy, Inc.*, 689 F.2d 94, 98 (6th Cir. 1982); *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 858-59 (6th Cir. 1992).

Plaintiff Rose Wilcher seeks monetary damages, declaratory judgment and preliminary and permanent injunction against the City of Akron, its mayor, and Time Warner Cable Northeast "to redress violations of federally protected rights of free speech and due process by a government entity and by

5:05 CV 0866                                        2

government officials under color of law against a citizen of the United States." Plaintiff challenges

recent changes submitted by Time Warner which were approved in its rules governing public access

channels which were approved by the City of Akron through its mayor on March 1, 2005 effective April

1, 2005. At issue is a summary of the recent rule changes:

> Only residents of Akron, Barberton, Cuyahoga Falls, Mogadore, Munroe Falls,
> and Wadsworth Township may submit programs for Channel 15 (the local
> community access channel).

> Programming submitted from the above communities will only be shown in
> Summit County.

> Substantially all of a program's content must be from locally produced sources.

> An administration fee of $25.00 per program will be required with the
> submission of each tape.

> Program producers must, upon request, be able to offer proof that they have
> obtained copyright clearance fo the material they present.

Plaintiff's complaint raises claims of violation of civil rights under 42 U.S.C. §1983 due to

infringement on the First Amendment right of free speech with compelling justification.[1] There is in the

complaint, however, a companion vague due process claim under the Fourteenth Amendment that is

strung through the allegations stemming from the mayor's approval of the rule changes in lieu of action

by the  City of Akron's Public Utilities Commissioner. §16 of the Time Warner franchise requires that

---

[1] **§1983.  Civil action for derivation of rights.**

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or
Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other
person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the
Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper
proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in
such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or
declaratory relief was unavailable.  For the purposes of this section, any Act of Congress applicable exclusively
to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C.A. §1983 (West 2003).

5:05 CV 0866                                                    3

before any rule changes promulgated by Time Warner become effective, "they shall be subject to the approval of the Akron Public Utilities Commissioner which approval shall not be unreasonably withheld." At that time and continuing to the present, the City of Akron has no Public Utilities Commissioner.

The City of Akron had granted a nonexclusive cable franchise under 47 U.S.C. §522(10) using its franchising authority power.  The term "franchising authority" means any governmental entity empowered by Federal, State or local law to grant a franchise.  The franchise permitted Time Warner to construct and operate a cable system and in its franchise agreement (¶ 17M) Time Warner, as a transmitter of programming over the television cable system, agreed to provide a community service channel.  See 47 U.S.C. §531(c) and (d).  Community service channels or public access channels are commonly known as public, education and government channels ("PEG").

The Cable Act provides statutory authority for government entities, such as the City of Akron, to require cable operators to enter franchise agreements governing the operations of the cable systems and to require the operators to provide under the Act's national standards for the provision of cable services.  See 47 U.S.C. §521.  One of the national standards authorizes its franchises to require the cable operator to set aside some channel capacity for the franchise to use or assign for the transmission of it what the Act labels "public, educational, or governmental use."  47 U.S.C. §531(b). [2] Such use is known as PEG programming.  See *Time Warner Cable of New York City v. Bloomberg, L.P.*, 118

---

[2]  And see 47 U.S.C. §552(a), which permits the franchising authority to establish and enforce customer service requirements. *Columbus Community Cable Access, Inc. v. Luken*, 923 F.Supp. 1026, 1028 (S.D. Ohio 1996).

5:05 CV 0866                                        4

F.3d 917, 920 (2nd Cir. 1997). There is only one PEG programming in the Akron Time Warner franchise and it is on Channel 15.

Plaintiff, Rose Wilcher, has been a producer of material for Channel 15. She acts as a conduit for what she describes as worship services, youth activities and civil and educational programming by submitting videotapes for the past several years which were played free of charge prior to the change by letter dated March 7, 2005 from the local vice president of public affairs for Time Warner, notifying plaintiff that the new rules required a $25 fee per program. The new rules do allow a producer to solicit funds to pay this fee, but plaintiff presented testimony from some organizations which claimed that this cause financial hardship. Also a representative from one service organization testified that the organization served the needs of recent immigrants in northeastern Ohio but its offices were located in North Royalton, Ohio, which is outside the geographical restriction of the new rules.

From the foregoing there are several key points to the resolution of this case. First, plaintiff does not challenge the statutory provisions governing cable television in Title 47 of the United States Code. Secondly, plaintiff does not rely upon any of these provisions as the basis for her case. Third, plaintiff raises her contentions solely under the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. §1983. Fourth, the rule changes were initiated by Time Warner Cable; were subject to municipal approval; submitted to the municipality; and approved by its mayor. Fifth, the mayor of Akron has been named in this complaint in his official capacity. Filing suit against a municipal officer acting in his official capacity is equivalent to naming a municipality itself. See *Brandon v. Holt*, 469 U.S. 464, 471-72, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). Sixth, there is no municipal ordinance under challenge. The challenge is limited to Time Warner's rules and regulations in which it had reserved the

5:05 CV 0866                                      5

right to promulgate under §16 of the franchise agreement.  Seventh, plaintiff concedes in her complaint

that these changes were "as a response to citizen complaints, Time Warner proposed community

programming rules changes to the City of Akron in December, 2004 (complaint, §22, Docket No. 1).


### I.  Likelihood of Success:

### Time Warner Cable Northeast [Time Warner]:

Defendant Time Warner contends that it was not a state actor and accordingly cannot be subject

of either injunctive or monetary relief.  As explained in the plurality decision in *Denver Area*

*Educational Telecommunications Consortium, Inc.*:

> We recognize that the First Amendment, the terms of which apply to
> governmental action, ordinarily does not itself throw into Constitutional doubt
> the decisions of private citizens to permit, or to restrict, speech — and this is
> so *ordinarily* even where those decisions take place within the framework of
> a regulatory regime such as broadcasting.

*Denver Area Educ. Telecommunications Consortium, Inc.. v. FCC,* 518 U.S. 727, 737, 116 S.Ct.

2374, 2383, 135 L.Ed.2d 888 (1996).


"[T]he guarantees of free speech and equal protection guard only against encroachment by the

government and 'erec[t] no shield against merely private conduct." *Hurley v. Irish-American Gay,*

*Lesbian and Bisexual Group of Boston*, 515 U.S. 557, 566, 115 S.Ct. 2338, 2344, 132 L.Ed.2d 487

(1995), quoting. *Shelley v. Kraemer*, 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed.2d 1161( 1948).


As the statute reads a claim under 42 U.S.C.§1983 may only be brought against a "person"

acting under "color" of state law. Both Time Warner and the City of Akron are deemed to be "persons,"

albeit artificial persons, given their corporate nature for purposes of this civil rights statute. See *Monnell v. Dept. Of Social Services of the City of New York*, 436 U.S. 658, 688, 98 S.Ct. 2018, 2034, 56 L.Ed. 2d 611 (1978). Plaintiff must establish both that she will prevail on her claim of deprivation of a right secured by the Constriction or laws of the United States and "that the alleged deprivation was committed under color of state law" *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50,119 S.Ct. 977, 985,143 L.Ed.2d 130 (1999). [T]he under-color-of-state-law element of §1983 excludes from its reach 'merely private conduct no matter how discriminatory or wrongful.'" *Id*, 526 U.S. at 50; *Blum v. Yaretsky*, 547 U.S. 991, 1002, 102 S.Ct. 2777, 73 L.Ed. 2d. 534 (1982).  When there is deprivation alleged under the Fourteenth Amendment ( which makes the Bill of Rights applicable to the states), "...the statutory concept of action under color of state law would be a distinct element of the case not satisfied implicitly by a finding of a violation of the particular federal right." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 n.18, 102 S.Ct. 2744, 2752.  73 L.Ed. 2d 482 (1982).


Time Warner, being a private for- profit corporation, would generally not be deemed a state actor unless plaintiff demonstrates that its actions may be "fairly attributable" to the state.  See *Lugar v. Edumondson Oil Co.*, 457 U.S. at 937, 102 S.Ct. at 2753; *American Mfrs.*, 526 U.S.  at 50;  *City of Cuyahoga Falls, Ohio v. Buckeye Community Hope Found.*, 538 U.S. 188, 189, 123 S.Ct. 1389, 1391, 155 L.Ed.2d 349 (2003); *Blum*, 457 U.S. at 1004,.  Three primary tests have developed to determine whether there is fair attribution: the public function test; the state compulsion test; and the symbiotic relationship or nexus tests.  *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 296-305, 121 S.Ct. 924, 930-934,148 L.Ed.2d 807 (2001): *Lugar*, 457 U.S. at 939.

5:05 CV 0866                                      7

Plaintiff argued at the hearing that there was a  nexus between Time Warner and the municipal defendants.  See *Lugar, supra*; *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000).Time Warner places particular reliance on *Cox v. Athena Cablevision*, 558 F.Supp. 258 (E.D. Tenn. 1982), aff'd, 734 F.2d 13 (6th Cir. 1981).  That decision, however, did not examine the question of fair attribution, nor did it employ *Lugar* or other Supreme Court precedent in reaching the conclusion that a cable operator  operating under municipal franchise was not transformed into a state actor for purposes of §1983.  See *id.*, 558 F.Supp.at 259.  Its reasoning did not comport  with current *Lugar-* analysis.

However,  neither extensive regulation nor private use of public property is sufficient alone to establish a nexus.  See *Lansing*, 202 F.3d at 830; *American Mfrs.*, 526 U.S. at 52 (extensive regulation in private insurer's decision to withhold payment); *Rendell-Baker v. Kohn*, 457 U.S. 830, 841, 102 S.Ct. 2764, 2771, 73 L.Ed.2d 418 (1982)( extensive school regulation); *Blum*, 457 U.S. at 1004 ( state nursing home regulations); *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974)( regulation of  electric utility); *United Auto Workers, Local 5285 v. Gaston Festivals, Inc.,* 43 F.3d 902, 909 (4th Cir. 1995)(private organizer of downtown  festival operated under municipal permit to use public property).

Plaintiff attempts to establish a nexus between the municipal defendants and Time Warner with reference to a petition submitted to Akron City Council "to investigate the PORN being shown on Warner Cable Channel 15, the Community Access Channel," which bears less than 30 signatures, and several local contemporaneous  newspaper articles based on comments of municipal administrative

officials. The gist of this argument is that Time Warner and the City had a joint goal of reducing pornographic programming on Channel 15.   "'These changes are in direct response to the many complaints of inappropriate programming,'said city spokesman Mark Williamson." "The Beacon Journal," *Cable-access rules change* by Julie Wallace,.pg. B-3 , March 13, 2005. In effect plaintiff is raising a state compulsion argument. "The state compulsion test requires that a state 'exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Lansing*, 202 F.3d at 829; *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992): *Blum*, 457 U.S. at 1004. However, the newspaper articles and the testimony established that Time Warner was receiving complaints from subscribers about the nature of late-night and early-morning programming on its PEG channel- so the matter was not merely one of municipal concern. "Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment" *Blum*, 457 U.S. at 1004-05.


          Plaintiff, though, adds that the City of Akron has regulatory control over the channel by approving the proposed regulations. If regulatory approval alone was sufficient to establish state action, then the Supreme Court's extensive discussion of state action and under-color-of-state-law in *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n,* would have been unnecessary, because the association was state regulated. *Id.*, 531 U.S. 288, 292, 121 S.Ct. 924, 928, 148 L.Ed.2d 807 (2001)( state board approved the Association's rules and regulations while retaining the right to review future changes). Case law establishes that, "[t]he touchstone of state action in the context of

5:05 CV 0866                                              9

governmental oversight is whether the government has moved beyond mere approval of private action into the realm   of 'encouragement, endorsement, and participation' of that action." *Duffield v. Robertson Stephens &  Co.*, 144 F.3d 1182, 1202 (9th Cir. 1998), *overruled* on other grounds, *EEOC v. Luce, Forward, Hamilton & Scripps,* 345 F.3d 772 (9th Cir. 2003), quoting *Skinner v. Railway Labor Executive's Ass'n*, 489 U.S.602, 615-16, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989).[3]

There was no evidence of collusion by means of encouragement, endorsement or participation in this case. Municipal officials and Time Warner employees did not work together   in proposing or drafting  the rule changes. No ordinance or resolution was passed to encourage the regulatory change. Compare, .*Missouri Knights of the Ku Klux Klan v. Kansas City*, 723 F.Supp. 1347 (1989)( city council passed resolution granting approval in advance of rule change under cable television franchise to delete the public access channel); and see *Skinner*, 489 U.S. at 615    ( government removed all legal barriers, expressed its strong preference for drug testing, and shared in test results ); but see, *Jackson*, 419 U.S. at 357( "where the [public utility] commission has not put its weight on the side of the proposed practice by ordering it... failure to overturn this practice" does not make its action "state action").

The evidence demonstrates that Time Warner was reacting to complaints from subscribers, and the coincidence that these subscribers were voters and some were petitioners for political action by city

_____

[3] *Skinner* was decided under the Fourth Amendment's joint action principle where a private party becomes an agent for the government. *Skinner*, though, appears to align the Fourth Amendments's joint action concept with the state compulsion test used in Fourteenth Amendment analysis in situations of legislative or regulatory encouragement.

5:05 CV 0866                                    10

council, does not demonstrate a nexus between Time Warner and the City of Akron anymore than did statements by private citizen petitioner circulators in the referendum drive against a low income housing complex establish a nexus to the municipality for state action in *Cuyahoga Falls, Ohio v. Buckeye Comm. Found.* See *Id.*, 123 S.Ct. at 1394-95.("...respondents put forth no evidence that the 'private motives [that] triggered' the referendum drive 'can fairly be attributable to the State.'")

There must be encouragement with municipal participation in the rule changes prior to their presentation for municipal approval. Plaintiff has not established that there were government officials' "fingerprints" on the rule changes when they were presented for municipal approval .Plaintiff has merely demonstrated approval and acquiescence by the regulatory authority of the actions of a private party, and it is well-established that mere approval or acquiescence in the initiatives of a private party is not sufficient to justify fair  attribution of that action to the state.  See *Blum v. Yaretsky*, 457 U.S. at 1004-05, 102 S.Ct. at 2786. Plaintiff has not demonstrated evidence of state involvement to show a nexus between Time Warner's rule changes and state action to justify treatment of Time Warner and municipal approval of its proposed regulation as state action to require treatment of Time Warner as a state actor for Fourteenth Amendment purposes.

Nor does plaintiff's reliance on *Horton v. City of Houston*, 179 F.3d 188 (5th Cir. 1999), alter the lack of nexus to state action. While that case had much in common on the issues of fees and originating locale of programming, the defendants in that case had conceded that  state action was present. *Id.*, 179 F.3d at 190-91 &  n.3   ( City granted cable franchise to Time Warner requiring Time

5:05 CV 0866                                           11

Warner to designate at least four PEG channels, but city engaged Access Houston Cable Corporation

(Access) to manage and operate PEG channel in question.  Although Access operated independently

of the city and the city attorney's office refused to become involved in programmer complaints, municipal

nexus was conceded ).


        Plaintiff alternatively argues that Time Warner is not a private entity because the "property" was

owned or controlled by the government.  Plaintiff maintains that the PEG Channel was a public forum

with reliance  on a combination of *Missouri Knights of the Ku Klux Klan v. Kansas City*, 723 F.Supp.

1347 (1989) and Justice Kennedy's opinion in *Denver Area Educ. Telecommunications Consortium,*

*Inc.. v. FCC,* 518 U.S. at  783, 116 S.Ct. at 2405 ("A public access channel is a public forum.....). "

Designated public fora... are created by purposeful governmental action." *Arkansas Educ. Television*

*Com'n. v. Forbes*, 523 U.S. 666,677, 118 S.Ct 1633, 1641, 140 L.Ed.2d 875 (1998); *International*

*Society for Krishna Consciousness, Inc., v. Lee,* 505 U.S. 672, 678, 112 S.Ct. 2701, 2705, 120 L.Ed.2d

541 (1992)(designated public forum is "property that the State has opened for expressive activity for part

or all of the public").  Under plaintiff's alternate argument Time Warner's PEG channel would be

government property.  This argument removes the situation from typical state-action analysis under the

public function, state compulsion or nexus tests, because in essence there is no private entity when there

5:05 CV 0866                                          12

is a public forum.[4]  Public forum tests are not a supplement to the "fair attribution" principles of *Lugar* and *Brentwood Academy*.


This point of view has some currency. See, *Jersawitz v. People TV*, 71 F.Supp. 2d 1330 (N.D. Ga. 1999); *Britton v. City of Erie, Pa.*, 933 F. Supp. 1261 (W.D. Pa. 1995, *aff'd,* 100 F.3d 946 (3rd Cir. 1996); *Demarest v. Athol/Orange Community. Television, Inc.*, 188 F.Supp. 2d 82 (D. Mass. 2002); *Coplin v. Fairfield Public Access Television Committee*, 111 F.3d 1395 (8th Cir. 1997). However, in those cases the conclusion that the PEG channel was a public forum required the courts to make only a short reach because there was a clear bond between the cable operators and local governments. See *Jersawitz*, 71 F.Supp 2d at 1332-33 ( People TV was a nonprofit public corporation established by the city and under control of city employees); *Britton*, 933 F. Supp at 1264 ( local access authority established pursuant to state statute took over control of PEG channel from private cable operator); *Demarest*, 188 F.Supp. at 90-91 ( AOTV was municipally authorized and operated PEG channel created under licence agreement with Time Warner and controlled by access group appointed by board of selectmen). *Coplin*, 111 F.3d at 1398 ( no private entity was connected to the activities of FPATV- it was supervised, managed and controlled by a committee appointed by city council). The notable exception is *Missouri Knights*, which involved a private cable operator.

---

[4] As shall be explained in more detail this argument should not be confused with the public function test. "The public function test requires that 'the private entity exercise powers which are traditionally exclusively reserved to the state, such as holding elections or eminent domain.'" *Lansing*, 202 F.3d at 828; *Wolotsky*, 960 F.2d at 1335.  Plaintiff, in effect maintains that Time Warner, or at least its PEG channel, is not a private entity in order to apply public forum analysis.

*Missouri Knights* was mistaken  in analogizing the public access channel to a private mailbox under government control based upon *U. S. Postal Service v. Council of Greenburgh Civic Ass'n.*, 453 U.S. 114, 101 S.Ct. 2676, 69 L.Ed.2d 517(1981). See *id*., 723 F. Supp. at 1351.  The majority in *U.S. Postal Service,* on the contrary, found that private letter boxes were not  public fora.  *Id*., 453 U.S. at 132.[5] Consequently, plaintiff relies upon flawed reasoning.


Nor is Justice Kennedy's unilateral and inadequately explained statement in *Denver Area Educ. Telecommunications,* persuasive under the present factual circumstances. The plurality summarized the history of this forum principles beginning with the dictum from *Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.*, "...that as an initial matter a speaker must seek access to public property or to private property dedicated to public use to evoke First Amendment concerns." *Id*., 473 U.S. 788, 801, 105 S.Ct. 3439, 3448, 87 L.Ed.2d 867 (1985).  See *Denver Area Educ. Telecom.*, 518 U.S. at 749; and see 518 U.S. at 827 (Thomas J., concurring and dissenting )( pointing out that the statement in *Cornelius* was dictum). The idea of dedicated private property traces back to the company town exception carved in *Marsh v. State of Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946), which addressed a traditional public  forum of

---

[5] Justice Brennan, concurring, disagreed believing that private mail boxes were public fora, so the Court should have applied reasonable time, place, and manner scrutiny to this  governmental limitation on exercise of First Amendment protected activity. See *U.S. Postal Service*, 453 U.S. at 134-36.

However, public forum principles do not prohibit access fees even though they constitute a prior restraint on the public's use of the forum. See, *Stonewall Union v. City of Columbus*, 931 F.2d 1130 (6th Cir. 1991) and *Forsyth County, Ga. v. Nationalist Movement*, 505 U.S. 123, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992). User fees may be charged to politically sponsored parades on public streets, so long as the fees are content neutral and non-discriminatory toward the speech in question, and the fees need not be nominal. See, *Forsyth County*, 505 U.S. at 136-37; *Stonewall Union*, 931 F.2d at 1136.Time Warner's fixed rate charge of $25.00 per program is content-neutral/ non-discriminatory and also nominal

5:05 CV 0866                                                14

an openly accessible and publicly used business-area sidewalk, in which title to the streets and sidewalks

vested with the corporate owner of the community, rather than government. And see *United Church of*

*Christ v. Gateway Economic Dev. Corp. of Greater Cleveland, Inc.*, 383 F.3d 449 (6th Cir. 2004)(

sidewalk surrounding sports facility was traditional public forum although company-owned ). The Supreme

Court, however, has disfavored the concept of fora created by private parties but dedicated to pubic use,

calling it "attenuated." *Hudgens v. NLRB*, 424 U.S. 507, 519, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976); *Lloyd*

*Corp. v. Tanner*, 407 U.S. 551, 568-69, 92 S.Ct. 2219, 2229,33 L.Ed.2d 131 (1972). By the time of

*International Society for Krishna Consciousness*, the Supreme Court divided public property into three

categories: government property that has been traditionally available for public expression; public property

that the state has opened for public expressive activity; and finally all other public property, which the Court

curiously referred to as "nonpublic fora." See *id.*, 505 U.S. 678-79.



When it comes to broadcasting and cable operation, however, the issue of ownership is in reality

quite philosophical, given the underlying intangible nature of electronic emissions and transmissions.  In our

expansively regulated society there are arguable governmental nexi to a range of activities from sophisticated

forms of electronically broadcast communication to an outlet spark by a too hastily unplugged vacuum

sweeper.  The government claims ownership to the more sophisticated electronic emissions with licensing.

Time Warner's existence depends upon activities conducted under government license and franchise, and

its PEG channel was created by government mandate under its franchise from the City of Akron.

Accordingly, the question whether the "property" is public or private depends on how far the decision-maker

is willing to follow the trail to an underlying governmental interest to usurp claimed ownership and control,

5:05 CV 0866                                   15

or to protect the right of private ownership and concomitant control.  The Supreme Court in *International Society for Krishna Consciousness, Inc.,* (activities in public airport ), and  *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed2d 448 (1973)( privately-owned theater under long-term lease to municipal agency), has provided  rationales limiting findings of public fora to instances of immediately apparent government control, if not outright government ownership.


It is immediately apparent that the ownership of Time Warner is private, and the PEG Channel in question is owned and controlled by Time Warner, not the city. There has been no transfer of direct oversight to municipal actors as in *Jersawitz, Britton,  Demarest,* or *Coplin*. Rather, the City of Akron claims only indirect regulatory control and has no control over the contents of the expressive activity, which further distinguishes the circumstances from *Southeastern Promotions*. Compare *Coplin*, 111 F.3d at 1400,  1402-03 (municipally operated PEG channel regulated and banned programming first with letter from committee followed by "clarification" from city attorney). Under the particular circumstances in this case, neither Time Warner nor this particular PEG channel is public property or deemed private property dedicated to public use because it mimics traditional  public fora, as in the company town exception.  Plaintiff has not shown a likelihood of success with respect to Time Warner.

5:05 CV 0866                  16

***Municipal Defendants:***

    **A.  First and Fourteenth Amendment Equal Protection:**

    Absent demonstration of joint participation by municipal authorities, there is really very little to add concerning the City of Akron and its mayor.  "Mere approval of or acquiescence in initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment." *Blum*, 457 U.S. at 1004-05, 102 S.Ct. at 2786; and see *Flagg Bros. v. Brooks,* 436 U.S. 149, 164-65, 98 S.Ct. 1729, 1737-38, 56 L.Ed.2d 185 (1978); *Jackson v. Metropolitan Edison Co.*, 419 U.S. at 357, 95 S.Ct. at 456.  In other words, there is no state action present to sustain plaintiff's First Amendment claims against the City of Akron or its mayor. Plaintiff has not shown likelihood of success.

    **B.  Fourteenth Amendment Due Process:**

    Plaintiff claims her civil rights were violated when Mayor Plusquellic and Marco Summerville, President of City Council, acted in approving the rule changes place of the unfilled position of municipal public utilities commissioner.  The evidence, however, establishes that this position was a delegation of mayoral power to an individual selected by the mayor subject to city council's approval (and see Akron Code §53 and 54).  Plaintiff's argument does not rise to the level of an unlawful delegation of power, but is merely a complaint that the appointing authority  acted directly in approving Time Warner's rule changes.  This argument fails to show violation of due process due to a deprivation of a right secured to plaintiff by law. See *Gomez v. Toledo*, 446 U.S. 635, 646, 100 S.Ct. 1920, 1923-24, 64 L.Ed.2d 572 (1980); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970).

5:05 CV 0866                                                17

**II.  Irreparable Injury:**

Plaintiff urges the Court to follow *Elrod v. Burns*, for the proposition that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id.*, 427 U.S. 347, 373-74, 96 S.Ct. 2673, 49 L.Ed.2d 547    (1976). However, only governmental encroachment is prohibited under the First Amendment, as discussed early in this decision, and no governmental encroachment has been demonstrated.  "'[T]he irreparable injury issue and the likelihood of success issue overlap almost entirely' in the First Amendment context." *Forum for Academic and Institutional Rights v. Rumsfeld*, 390 F.3d 219, 246 ( 3rd Cir. 2004) quoting, *Beal v. Stern*, 184 F.3d 117, 123 (2d Cir. 1999). Since plaintiff has not shown governmental action in relation to her First Amendment claim, plaintiff has not shown irreparable injury under the First Amendment.

"[Plaintiff] must [ also] demonstrate a likelihood of success on the merits to a degree inversely proportional to the amount of irreparable harm that will be suffered if a stay does not issue." *Family Trust Found. of Ky. Inc. v. Kentucky Judicial Conduct Comm'n,* 388 F.3d 224, 227 (6th Cir. 2004). Since plaintiff has demonstrated neither likelihood of success on the merits nor irreparable injury, the weight rests on side for denial of the motion for preliminary injunction.

**III.  Substantial Harm to Others:**

Plaintiff contends that issuance of a preliminary injunction will not cause harm to Time Warner essentially because it will merely restore the prior PEG channel procedures. Time Warner granted would loose revenue, but it had never depended on PEG access fees as a revenue source  previously, and the municipal

5:05 CV 0866                                   18

defendants would not be affected one way or the other. Plaintiff has shown that issuance of the preliminary injunction would not cause substantial harm to others.


### IV. Public Interest:

Plaintiff claims that the fees have resulted in a loss of PEG programming, with hours of unused programming time and that there is the risk of deterring potential producers from developing programming and diminishment of the views and information available to PEG channel viewers.  See *Time Warner Cable of New York City v. Bloomberg L.P.*, 118 F.3d 917, 929 (2d Cir. 1997). On the other hand, "the public interest is served by preventing a violation of constitutional rights" because there is no violations.  *Tucker*, 398 F.3d at 464; *Chabad of Southern Ohio & Congregation Lubavitch, v. City of Cincinnati,* 363 F.3d 427, 436 (6th Cir. 2004). A preliminary injunction in this case would not in this case prevent a violation of constitutional rights. So the matter distills into the question whether the public interest would be better served by restoring the *status quo,* and presumably temporarily expanding PEG programming balanced against  the expense of Time Warner.  Presumably Time Warner can bear the loss far better than plaintiff can bear the expense. Time Warner's actions, however, have not been shown to be unconstitutional, so there is no strong reason why it should be denied a source of legitimate revenue simply because plaintiff objects to paying. The public interest would be better served by immediate recognition of the legal finding that Time Warner is not a constitutional infringer, than to allow plaintiff to unjustly profit  even with resultant reduction of PEG programming. The public interest would not be better served by an unjust, but temporary prohibition.

5:05 CV 0866                                        19


### CONCLUSION AND RECOMMENDATION

For the reasons stated, it is recommended that the plaintiff's motion for preliminary injunction be denied.

                                              s/James S. Gallas
                                     United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).


Dated: May 13, 2005